**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-30583
Summary Calendar

_____


PHILLIP ARNOLD, doing business as ARNOLD'S DIXIE DANDY,

Plaintiff - Counter-Defendant - Appellant,

VERSUS

UNITED STATES OF AMERICA, on behalf of UNITED STATES
DEPARTMENT OF AGRICULTURE, FOOD & NUTRITION SERVICES

Defendant - Counter-Claimant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(97-CV-1109)

_____

May 6, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:[*]

This case concerns a series of violations arising out of Appellant Phillip Arnold's participation in the federal Food Stamp Program. Arnold appeals two judgments by the district court. First, he appeals the district court's Memorandum Ruling and Judgment granting summary judgment in favor of the United States on its decision to disqualify Arnold permanently from participating in the Food Stamp Program. Second, he appeals the district court's judgment in favor of the United States on its False Claims Act

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

counterclaim. For reasons that follow, we affirm both judgments.

## I.

Arnold is the sole proprietor of Arnold's Dixie Dandy ("ADD"), a retail grocery store located in Newellton, Louisiana. ADD was authorized to accept food stamps under the federal Food Stamp Program from 1967 until 1997, when the Food and Nutrition Service ("FNS") permanently disqualified ADD from participating in the program for trafficking in food stamps. FNS based this disqualification on seven violations of the Food Stamp Act in January 1996 and February 1996. On five occasions, ADD, through an employee, accepted food stamp coupons in exchange for ineligible merchandise. On two occasions, an employee of ADD accepted food stamp coupons in exchange for cash. Arnold concedes the first five violations, but denies the last two. He argues that the two coupon-for-cash exchanges were committed by an employee, Billy Lee, as part of a scheme to defraud ADD.

The FNS informed Arnold of the seven violations in October 1996, and notified him of his disqualification from the Food Stamp Program in January 1997. Arnold filed a timely Request for Administrative Review with the United States Department of Agriculture ("USDA"), and the USDA upheld the disqualification. In April 1997, Arnold filed a Petition to Request Judicial Review in Louisiana state court. In June 1997, the United States removed the action to federal court. In July 1997, the United States filed its answer and a counterclaim under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq. In May 1998, the United States filed a Motion for Summary Judgment. The district court issued a Memorandum

Ruling and Judgment granting summary judgment on the issue of permanent disqualification, but denying summary judgment on the issue of the FCA counterclaim. The court held a bench trial on the counterclaim, at the conclusion of which the court found in favor of the United States and awarded $70,953.41 in damages and penalties under the FCA. This appeal followed.

II.

Arnold first contests the district court's Memorandum Ruling and Judgment granting summary judgment on the issue of permanent disqualification. "Cases arising under the Food Stamp Act, 7 U.S.C. §§ 2011 et seq., may be resolved in the district court by summary judgment where there are no genuine issues of material fact." Cullen Drive-In Grocery v. Block, 778 F.2d 1141, 1142 (5th Cir. 1985). Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Arnold contends that there was a genuine issue of material fact as to whether ADD ever engaged in food stamp trafficking. In support of this contention, he points to evidence that: (1) Arnold was not in the store on February 10, 1996 and February 12, 1996, the dates on which the coupon-for-cash transactions occurred; (2) Arnold's office does not match the description provided by undercover operative Franklin Washington; (3) Arnold does not match descriptions of the trafficker provided by Washington and another undercover operative; and (4) the person who exchanged cash for

3

food stamp coupons placed the food stamp coupons in his pocket, not in the store's cash register. Related to this last point, Arnold points out the absence of any evidence showing that ADD ever received the food stamps for which cash was exchanged. Because there is a genuine issue of material fact as to whether ADD ever received the food stamps, Arnold argues, there is also a genuine issue of material fact as to whether ADD ever engaged in food stamp trafficking.

These arguments are unpersuasive. Arnold does not dispute, and has never disputed, that ADD employees accepted food stamps in exchange for ineligible merchandise. He only denies involvement in the two coupon-for-cash transactions. The regulations define trafficking of food stamps as "the buying or selling of coupons . . . for cash *or consideration other than eligible food [items]*." 7 C.F.R. § 271.2 (emphasis added). Thus, even if there were some genuine issue as to the coupon-for-cash transactions, that would have no effect on the conclusion that ADD trafficked in food stamps when it accepted coupons for ineligible merchandise. The regulations mandate permanent disqualification from the Food Stamp Program under such circumstances. See 7 C.F.R. § 278.6(e)(1)(i) ("The FNS shall take action as follows against any firm determined to have violated the Act or regulations. The FNS regional office shall: (1) disqualify a firm permanently if: (i) personnel of the firm have trafficked as defined in § 271.2."). Consequently, there is not even a *disputed* issue of fact, much less a *genuine* issue of fact, as to any matter material to ADD's permanent disqualification from the Food Stamp Program. The district court correctly granted

4

summary judgment in favor of the United States on the issue of permanent disqualification.

                                    III.

Arnold next challenges the district court's judgment in favor of the United States on the FCA counterclaim. To establish a claim under the FCA, the United States must establish four essential elements: (1) the defendant presented or caused to be presented to an officer or employee of the United States Government a claim for payment or approval; (2) the claim was false or fraudulent; (3) the defendant acted knowingly or with deliberate ignorance or in reckless disregard concerning the truth of the information contained in the claim presented; and (4) the United States suffered damages as a result of the false claim. See 31 U.S.C.A. § 3729(a) (Supp. 1998).

Arnold's challenge centers on the first element--presentation of a claim. He points out that mere redemption of food stamps for ineligible merchandise, or even for money, does not constitute a claim under the FCA absent evidence of presentation for payment. He argues that the record contains no evidence that any of the food stamps allegedly received by ADD in violation of the Food Stamp Program were ever presented to the United States for false payment. In the case of the coupon-for-cash transactions, he notes, the record indicates that the individual buying the food stamps did not even place them in the register, but instead placed them into his own pocket. Moreover, Arnold observes that each of the food stamps used in the alleged violations had serial numbers and that the serial numbers were recorded prior to use. Arnold contends that

                                     5

there is "not one thread of evidence" that ADD presented any of those food stamps--identifiable by their serial numbers--to the United States for payment.

Whatever the merits of this argument, it is severely compromised by Arnold's failure to raise it at trial. It is well-accepted in this court that "[a]s a general principle of appellate review, we refuse to consider issues not raised below." Coastal States Marketing, Inc. v. Hunt, 694 F.2d 1358, 1364 (5th Cir. 1983). "Judicial economy is served and prejudice avoided 'by binding the parties to the facts presented and the theories argued below.'" Id. (quoting Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1144 (5th Cir. 1981)). Thus, "[a]n appellate court will not review actions of omission or commission by a trial court unless the defendant makes known to the court the action which he desires the court to take or his objection to the action taken by the court and the grounds therefor." United States v. Thomas, 429 F.2d 407, 408 (5th Cir. 1970). The only exception to this rule is "where refusal to consider the issue would result in a miscarriage of justice" or "where there is no opportunity to make a timely objection." Delesdernier v. Porterie, 666 F.2d 116, 125 (5th Cir. 1982).

At the beginning of trial, the district court stated:

The Court has already, by ruling on the summary judgment, found that the plaintiff engaged in seven violations of the Food Stamp Act, including trafficking violations. The regulations provide that these violations constitute false or fraudulent claims for the purpose of the False Claim Act. Therefore, the only issue remaining for trial is whether Plaintiff, Phillip Arnold, knowingly violated the Food Stamp Act. Knowingly is defined as actual knowledge, deliberate ignorance or reckless disregard of truth or falsity of information without the necessity of specific intent. Now I

6

> would ask, starting with Mr. Smith, do all the lawyers agree
> that that is the only issue that I have to decide here in this
> case as we sit here this evening?

At no time during the lengthy discussion following this statement did Arnold's counsel suggest that there was an issue of fact as to whether Arnold presented the food stamps to the United States for payment. Indeed, the only additional issue that Arnold's counsel sought to raise was "whether it was actually Mr. Arnold or another individual at the store who engaged in the trafficking violations." If Arnold wished for the trial court to hear evidence on the presentation issue, he certainly failed to make that desire known to the court. We do not find that refusal to consider this issue on appeal would result in a miscarriage of justice, and Arnold clearly had ample opportunity to object. Therefore, we refuse to consider Arnold's challenge to the district court's judgment on the counterclaim.

AFFIRMED.